## Hepler v. Liberty Mutual Fire Insurance Co.
## (No. 4)

*Richard Angino,* for plaintiffs.
*Thomas J. Williams,* for defendants.

HESS, *J.,* February 7, 1992—This case arises out of an automobile accident that occurred on May 19, 1988, in which it is alleged that the plaintiff, Diane E. Hepler, suffered serious injuries. The carrier for the tortfeasor paid its liability limits. The plaintiffs thereafter sought additional moneys from Liberty Mutual by virtue of underinsured motorists coverage. In that connection, they have requested arbitration. Liberty Mutual has responded that their policy of insurance with the Heplers was amended on April 3, 1988, to permit arbitration only with the mutual consent of the insured and the insurer. As the insurer now does not consent, Liberty Mutual contends that arbitration is barred.

Inasmuch as Liberty Mutual refused to select an arbitrator, the Heplers brought the instant action. This court has previously held that arbitration is not required and that the parties are bound by the arbitration language contained in the policy amended April 3, 1988. Since our last ruling on this matter, the plaintiffs have been granted leave to file an amended complaint to compel arbitration. A hearing was held in the matter on January 16, 1992. Our recent hearing adduced pivotal testimony which has not heretofore been a part of the record of this case.[1] Our determination today is based upon the following facts gleaned from sworn testimony as well as assertions by the plaintiffs in the pleadings which are admitted by the defense.

Coverage was initially issued by Liberty Mutual Fire Insurance Company, to the plaintiffs, for the period April 3, 1986, to April 3, 1987. The original policy had a part (c) entitled, "Uninsured Motorist Coverage," which provided an arbitration clause whereby either party could make a demand for arbitration. A declaration sheet forwarded by Liberty Mutual and covering the period of April 3, 1987, to April 3, 1988, likewise, contained an arbitration provision permitting either party to make a demand for same. During the policy year of April 3, 1987, to April 3, 1988, Liberty Mutual, through Insured Services Offices Inc. (ISO), sought to have the existing arbitration clause changed to require mutual consent of both insurer and insured. In this regard, a formal request was submitted by Insurance

---

1. The testimony produced has been, in one way or another, previously referred to in oral argument and by attachments to briefs. Such references, of course, do not make facts a part of the record of a case.

Services Offices Inc. through its regional manager, Kenneth J. Potavin. The letter was endorsed with an approval effective November 1, 1987. The approval was accompanied by a written note reflecting Mr. Potavin's representation to the insurance commissioner that the proposed change in arbitration language was not intended to alter the intent of the regulatory language regarding arbitration. This representation was reiterated, in writing, on December 7, 1987, when Insurance Services Offices Inc. wrote a letter containing the following paragraphs:

"It is our intent to revise the ISO arbitration provision to bring it more in line with the procedures of the commercial arbitration panels, such as the AAA. These panels require mutual consent prior to entering into arbitration procedure. Major independents also use mutual consent as required by the AAA.

"We wish to point out that the approved arbitration language in Pennsylvania is to the insured's favor in the event the insured does *not* wish to arbitrate. In that case, the insured's refusal to arbitrate requires the insurer to go to court. Under the previous language (either party), which does *not* require mutual consent, the insurer could force the insured to go to arbitration in this situation."

Despite the language of this letter, Liberty Mutual, the *insurer,* is the party now objecting to arbitration. At our recent hearing, the plaintiffs' witnesses testified as experts in the insurance industry to the effect that arbitration was a procedure favorable to the *insured.* Their testimony is to the effect that, in what is tantamount to an adhesion contract, the defendant has sought to

impose upon the insured an arbitration provision favorable to itself and in violation of Pennsylvania's regulatory scheme. They have done so, all the while representing to the insurance department a contrary intent.

On January 25, 1988, Mr. Michael Paynes, of the Bureau of Policy Examination, rescinded the approval of the uninsured/underinsured motorist coverage endorsement containing the mutual consent to arbitration requirement. Considerable correspondence was exchanged, during the spring of 1988, between Insurance Services Offices Inc. and the insurance department. This did nothing, however, to alter the position of the department that the proposed change, requiring mutual consent to arbitration, had been disapproved. On April 28, 1988, ISO submitted a filing which formally eliminated mutual consent arbitration language. Citing the enormous administrative burden on insurance companies to reprint their forms, ISO requested that their filing become effective June 1, 1988.

This case can be rather easily summarized. The defendant insurance company sought to amend its policy with the plaintiff to contain an arbitration clause which was not in conformity with Pennsylvania's regulatory scheme. They obtained initial approval of this change by representing it as one favorable to the insured: a position which the instant litigation belies. The proposed change was disapproved by the insurance department and never, thereafter, approved. The April 28, 1988, submission of ISO was approved, effective June 1, 1988, for reasons having to do with the clerical problems of the insurance industry. Nowhere in the April submission did ISO request the insurance department to approve mutual consent arbitration language

retroactively until June 1, 1988. It was therefore the case that, on the anniversary date of the plaintiff's policy, Liberty Mutual unilaterally attempted to change its existing policy with the plaintiffs by using language which had been expressly disapproved by the insurance department.

The narrow question presented in this case is whether effect may be given to endorsements changing existing arbitration clauses of insurance policies where such endorsements have not been approved by the insurance department as of the date the endorsement is to become effective. We have found no cases on point, neither have counsel cited any. We are satisfied, however, that the Insurance Company Law, 40 Pa.C.S §341 et seq., as well as the Uninsured Motorist Clause Act, 40 Pa.C.S §2000, resolve the question in favor of the plaintiff.

The Insurance Company Act, specifically at 40 Pa.C.S §477(b) provides that it shall be unlawful for any insurance company to use endorsements unless they have been formally approved by the insurance commissioner. In addition, the Act provides that approval "[s]hall become void upon any subsequent notice of disapproval from the insurance commissioner...." In addition, the Uninsured Motorist Clause Act, 40 Pa.C.S §2000,[2] has

_____

2. Section 2000 of the act provides:

"(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed

been construed to empower the insurance commissioner to promulgate regulations requiring arbitration clauses in automobile insurance policies. In *Prudential Property and Casualty Insurance Company v. Muir,* 99 Pa. Commw. 620, 513 A.2d 1129 (1986), *alloc. denied,* 514 Pa. 637, 522 A.2d 1106 (1987), the court laid to rest the question of the authority of the insurance commissioner to require arbitration clauses specifically in uninsured/underinsured coverage. The regulation of the insurance commissioner, contested in *Prudential, supra,* and directly applicable to this case, appears at 31 Pa. Code 63.2(a). It provides:

"(a) The extent of coverage which shall be offered as "Uninsured Motorists Coverage" shall be at least that coverage contained in the sample form attached hereto as exhibit "c" and made a part of this section, which is the national standard form for this insurance."

Exhibit "c," paragraph 8, *Arbitration,* further provides:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, *upon written demand of either,* the matter or matters

from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), *under provisions approved by the insurance commissioner,* for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operations of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom...." (emphasis added)

upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement." 31 Pa. Code §63.2, exhibit "c," paragraph 8 of Conditions. (emphasis added)

To permit the insurer, by unilateral endorsement, to modify the minimum coverages provided by regulation, would be to render the authority of the insurance commissioner a nullity and to defeat the legislative purpose of the Uninsured Motorist Clause Act. We have no choice, therefore, but to conclude that the defendant's modification of its policy with the plaintiffs was void and that, as of May 19, 1988, either party to the insurance contract was at liberty to request arbitration.

## ORDER

And now, February 7, 1992, the application of the plaintiffs to compel arbitration is granted. The case with regard to defendant Joseph Duffy is herewith severed and further proceedings therein stayed pending the outcome of arbitration proceedings.